# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DIANE MEYER,
     Plaintiff,

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:12-cv-546
Beckwith, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 17) and the Commissioner's response in opposition. (Doc. 22).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in February 2004, alleging disability since January 24, 2004, due to hearing loss and fibromyalgia. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before Administrative Law Judge (ALJ) Deborah Smith. At the first ALJ hearing, held on April 13, 2006, plaintiff appeared without representation and the ALJ continued the hearing to allow plaintiff the opportunity to retain counsel. The second hearing was held on June 27, 2006, and plaintiff, represented by counsel, and a vocational expert (VE) appeared and testified. The ALJ determined that a third hearing was necessary in order to secure additional testimony from medical experts; consequently, a third hearing was held on March 27, 2007, at which plaintiff, two medical experts (ME), and a VE testified. On April 26, 2007, the ALJ issued a decision

denying plaintiff's DIB and SSI applications.  Plaintiff's request for review by the Appeals

Council was denied and in March 2009, she filed for judicial review of the ALJ's decision.  *See*

*Meyer v. Comm'r of Soc. Sec.*, No. 1:09-cv-223 (S.D. Ohio 2009) (*Meyer I*).

In *Meyer I*, District Judge Barrett adopted the Report and Recommendation of Magistrate

Judge Hogan to remand the matter back to the ALJ, determining that the ALJ erred by: failing to

properly weigh the evidence of record; not providing a sufficient rationale for rejecting the

opinions of plaintiff's treating physicians; and ignoring relevant evidence.  *See Meyer I*, No.

1:09-cv-223 (Doc. 19 at 15-18).

On remand, plaintiff, through counsel, appeared at a fourth hearing on November 10,

2011, before ALJ Smith.  Plaintiff, a ME, and a VE testified at the ALJ hearing.  On January 24,

2012, the ALJ issued a decision finding that plaintiff was not disabled.  Plaintiff's request for

review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] met the insured status requirements for disability insurance

3

benefits on her alleged onset date of January 24, 2004, and continued to meet them through September 30, 2009 (Exhibit 5D/1).

2. There is no evidence that the [plaintiff] engaged in any substantial gainful activity since her alleged onset (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: hearing loss, osteopenia, facet arthropathy of the lumbar spine, degenerative disc disease of the lumbar spine, asthma, an anxiety disorder, and a major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Careful consideration of the entire record shows that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should avoid climbing ladders, ropes, and scaffolds. She can perform posturals on an occasional basis. She should avoid moderate exposure to respiratory irritants due to asthma. Due to hearing loss, she should avoid working around loud noises. Although there is little to no treatment history for mental impairments, the undersigned gives her generous benefit of the doubt and limits her to performing simple, routine, repetitive work.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1961, was 42 years old on her alleged onset date, and considered to be a younger individual. She is currently 50 years old and considered to be an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[1] Plaintiff's past relevant work was as a licensed practical nurse. (Tr. 360, 409, 481, 1082).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] could perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, at any time from January 24, 2004, through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 469-82).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

---

[2] The VE testified that plaintiff could perform work as a cashier, small products assembler, inspector, and inspector packer. (Tr. 1082-84).

5

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff raises two assignments of error: (1) the ALJ erred in determining that plaintiff's right shoulder impairment is not severe; and (2) the ALJ erred in weighing the medical opinions of record and formulating plaintiff's residual functional capacity (RFC).

1. The ALJ did not err in classifying plaintiff's right shoulder impairment as nonsevere.

Plaintiff asserts the ALJ erred in finding that her right shoulder impairment is not severe given the objective and opinion evidence of record. In support, plaintiff cites to clinical findings and x-ray results demonstrating that she has impingement syndrome in her right shoulder and medical opinion evidence that her shoulder impairment significantly restricts her abilities, particularly her ability to lift and carry. (Doc. 17 at 20, citing to Tr. 295-97, 313-14, 426). Plaintiff further asserts the ALJ erred by failing to provide any rationale for determining that her shoulder impairment is not severe. Plaintiff's argument is not well-taken.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions like walking, standing, lifting, and

carrying; the capacity for seeing and hearing; and the ability to use judgment, respond to

supervisors, and deal with changes in the work setting. 20 C.F.R. §§ 404.1521(b), 416.1521(b).

Plaintiff is not required to establish total disability at this level of the sequential

evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff

must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.,*

736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a

"slight abnormality which has such minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education, and

work experience." *Farris v. Sec'y of H.H.S.,* 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v.*

*Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a *"de minimis* hurdle"

in the sequential evaluation process. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988). *See*

*also Rogers*, 486 F.3d at 243 n.2.

The medical evidence regarding plaintiff's right shoulder impairment demonstrates that

for a discrete period of time the condition significantly limited plaintiff physically. Between

March 2006 and February 2007, plaintiff made repeated complaints of shoulder pain to her

treating physician, Brad Patterson, M.D., the consultative examining physician, David P. Herr,

D.O., and to physicians treating her at Brown County General Hospital. (Tr. 275, 287, 313, 318,

326). On March 31, 2006, Dr. Patterson noted tender points on plaintiff's shoulders upon

physical examination. (Tr. 275). Undated progress notes from Dr. Patterson's practice show that

plaintiff had severe tenderness with profound limitation of movement of the right shoulder joint,

which made a cracking sound with manipulation. (Tr. 326). A July 12, 2006 physical

examination by an emergency room physician revealed tenderness with deformity over the right

7

acromioclavicular joint and reduced range of motion. (Tr. 313-14). At that time, the treating

physician opined that plaintiff's x-ray, as interpreted by him in the absence of a radiologist,

showed that plaintiff had naturopathy of her acromioclavicular joint with mild chronic

separation. (Tr. 314). At the July 25, 2006 consultative examination, Dr. Herr observed that

plaintiff had "very marked painful crepitus of the right shoulder associated with genuine

weakness of right shoulder abduction and flexion due to disruption of rotator cuff muscle tendon

structures; severe subacromial pain with abduction and flexion of the shoulder associated with

grinding crepitus and snapping of the shoulder during passive range of motion, as well as active

range of motion of the right shoulder. The examination of the right shoulder was entirely

consistent with long-standing shoulder impingement syndrome and rupture of the supraspinatus

tendon." (Tr. 289). Dr. Herr diagnosed plaintiff with a tear of the supraspinatus tendon, right

shoulder and bilateral shoulder impingement syndrome. (Tr. 289). Further, Dr. Herr opined that

plaintiff was restricted to lifting and/or carrying less than ten pounds occasionally and frequently

and limited in her ability to use her upper extremities to push and/or pull. (Tr. 290, 295-97). A

February 2007 progress note from Dr. Patterson shows that plaintiff continued to have right

shoulder pain with decreased range of motion. (Tr. 321). Thus, for at least this limited period of

time the record establishes that plaintiff's right shoulder condition was more than a "slight

abnormality."

However, there exists substantial evidence demonstrating that the shoulder impairment

was not a long-standing condition. MRIs of plaintiff's shoulders taken in July 2006 revealed

normal findings. (Tr. 309). Further, subsequent examinations from 2010 and 2011 show that

plaintiff had full range of motion in her shoulders and equal strength in her upper extremities.

*See* Tr. 771, 803, 895, 934, 975, 998. These normal findings from 2010 indicate that plaintiff's right shoulder condition was an acute problem that impacted her abilities for a period of less than twelve months as it appears to have resolved after 2007.[3] Given the lack of any evidence that plaintiff continues to be limited by this condition, the ALJ's refusal to classify the condition as severe is substantially supported. Moreover, plaintiff's right shoulder impairment does not qualify as a condition that would entitle her to disability benefits as it fails to meet the "not less than 12 months" durational requirement. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).

The ALJ's decision is further supported by the ME's testimony at the ALJ hearing. Dr. Lee A. Fischer, the ME, testified that the record evidence indicated that plaintiff's right shoulder condition was a generalized pain and that there was insufficient evidence to support a finding that it was an ongoing problem. (Tr. 1068-69). Dr. Fischer also provided responses to interrogatories propounded by the ALJ wherein he specified what impairments he believed plaintiff suffered from based on his review of evidence submitted post-hearing; he did not find that plaintiff suffered from a right shoulder impairment. *See* Tr. 1034. Dr. Fischer's opinion, based on a review of the entirety of the rather lengthy medical evidence, when viewed in conjunction with the objective and clinical evidence cited above, substantially supports the ALJ's finding that plaintiff's right shoulder condition is not a severe impairment.

Lastly, as noted by the Commissioner, even if the ALJ erred in this regard, any resulting error would be harmless. Where an ALJ considers all of a plaintiff's impairments (both severe and non-severe) in determining the plaintiff's RFC, the ALJ's failure to characterize additional

---

[3] Plaintiff concedes that her shoulder impairment did not develop until 2006. *See* Doc. 17 at 20.

impairments as "severe" is not reversible error. *See Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ determined that plaintiff suffered from various severe impairments and continued the sequential evaluation process until she determined that plaintiff could perform jobs that exist in significant numbers in the national economy and was not disabled at Step Five of the sequential analysis. In assessing plaintiff's RFC, the ALJ considered plaintiff's shoulder impairment and incorporated the following limitations: "[plaintiff] should avoid climbing ladders, ropes, and scaffolds. She can perform postural on an occasional basis." (Tr. 474). Further, the ALJ's finding that plaintiff can perform a limited range of light work appropriately accounts for plaintiff's shoulder condition by limiting the amount of weight she would be required to lift and carry.[4] *Id*. Plaintiff has not identified any medical evidence or opinion after the 2006 to early 2007 time period discussed above demontrating that these limitations do not sufficiently accommodate plaintiff's right shoulder impairment.

Given this substantial evidence showing that plaintiff's right shoulder condition did not interfere with plaintiff's ability to work, *Farris*, 773 F.2d at 90, the undersigned finds that the ALJ's determination that it was not severe is substantially supported. In any event, the RFC formulated by the ALJ addresses any limits caused by the shoulder impairment rendering any ostensible error harmless. The undersigned accordingly recommends that plaintiff's first assignment of error be overruled.

2. <u>The ALJ's RFC formulation is supported by substantial evidence</u>.

For her second assignment of error, plaintiff argues the ALJ erred in formulating her RFC

---

[4]The ALJ's RFC finding is address more fully *infra*.

10

by not adopting supported limitations from her treating physicians and consultative examiners

and by failing to properly account for her hearing loss. Specifically, plaintiff asserts: (1) the ALJ

did not include appropriate limitations to address her hearing impairment and that the

accommodation set forth in the RFC is unsupported by substantial evidence; (2) the ALJ erred in

rejecting supported limitations provided by her treating physicians, Dr. Walker and Dr. Patterson,

who both opined that plaintiff's physical limitations precluded her from engaging in substantial

gainful activities, and by rejecting the limitations provided by consultative examiner Dr. Herr;

and (3) the ALJ's finding that plaintiff can perform light work is not supported by any medical

opinion. For the following reasons, plaintiff's arguments are not well-taken.

First, the ALJ properly accounted for plaintiff's hearing loss in formulating her RFC by

providing that plaintiff should avoid working around loud noises. *See* Tr. 474. Plaintiff argues

that this accommodation "makes little sense" as her hearing impairment made it harder for her to

hear and she could actually hear loud noises better. (Doc. 17 at 16). Plaintiff contends that her

difficulty is with hearing softer and high pitched noises - not loud ones - and that the ALJ erred

in creating this accommodation as it mischaracterizes the nature of her impairment. *Id.* Plaintiff

has not identified any evidence supporting her assertion that she is better able to hear loud noises

or that she could or should tolerate exposure to them by virtue of her hearing impairment.

Further, the evidence demonstrates the contrary. The consultative audiologic examiner opined

that plaintiff should limit her exposure to loud noises as it may exacerbate her hearing loss. (Tr.

304). Further, Dr. Fischer testified at the ALJ hearing that plaintiff's hearing impairment would

have a minimal impact on her ability to work but that she should avoid exposure to loud noises.

Dr. Hausladen, an otolaryngologist and one of the MEs who testified at the first ALJ hearing,

11

stated that plaintiff should avoid loud noises. (Tr. 437, 1069). There is no medical opinion or

evidence contradicting this opinion evidence that plaintiff should avoid loud noises or supporting

plaintiff's argument that the ALJ erred in his characterization of the evidence of her hearing

impairment. Thus, the ALJ's RFC in this regard is substantially supported.

Plaintiff also claims the ALJ erred by not including in the RFC the requirement that

plaintiff be limited to jobs allowing for face-to-face communication to permit her to read lips.

Plaintiff claims there is no medical evidence supporting the ALJ's conclusion that plaintiff does

not need to read lips to hear effectively and that the lack of a lip reading accommodation shows

the ALJ did not understand the nature of her impairment. Upon review of the record evidence,

the Court finds that the ALJ appropriately accounted for plaintiff's hearing impairment in

formulating her RFC.

The relevant medical evidence of plaintiff's hearing loss consists of: (1) audiologic

evaluation testing done for disability purposes by Allen M. Seiden, M.D; (2) observations from

other medical providers of record regarding plaintiff's hearing loss; (3) the testimony of Dr.

Hausladen, an otolaryngologist who testified as an ME; and (4) the opinion of the state agency

reviewing physicians. Dr. Seiden tested plaintiff in August 2006 and found that plaintiff had

52% word recognition in her right ear and 40% in her left. (Tr. 300). Dr. Seiden opined that

plaintiff had "severe-to-profound sensorineural hearing loss . . . she relies very heavily on lip

reading to communicate." (Tr. 299, 303). Dr. Seiden further opined that plaintiff should be

limited to exposure to noise as excessive noise exposure may exacerbate hearing loss. (Tr. 304).

There is additional audiologic testing evidence which shows that plaintiff had 68% word

recognition in her left ear; 64% in her right; and 76% combined. *See* Tr. 267-69. This test is

undated and the source of the evidence is unclear, though the ALJ and plaintiff refer to this as

testing from March 2006. *See* Doc. 17 at 3; Tr. 471.  Further, Dale Seifert, M.S. Ed., the

psychologist who examined plaintiff in September 2004 observed that plaintiff's hearing loss

was a problem throughout their session but noted that plaintiff's hearing aid was not currently

working (Tr. 243); plaintiff's treating physician, Gloria Walker, M.D., noted in February 2004

that plaintiff had significant hearing loss (Tr. 171); and Bradley Patterson, M.D., another treating

physician, observed significant hearing loss in both ears in March 2006 (Tr. 275) and diagnosed

her with "100% high pitch profound [hearing] loss" in February 2007. (Tr. 275, 319).  In

contrast, consultative examiner Jennifer Wischer Bailey, M.D., examined plaintiff in July 2004

and stated that though plaintiff complained of hearing loss, "she was able to converse with me

quite well and hear and understand conversational voice without difficulty." (Tr. 237).

Likewise, Dr. Herr, a consultative examiner, reported that plaintiff had no impairment of her

ability to communicate and "her hearing was sufficient for understanding of speech at a normal

level of speaking volume throughout the examination." (Tr. 298).  At the first ALJ hearing, Dr.

Hausladen testified that a hearing aid would definitely help plaintiff hear more conversationally

but that she could continue to have a very difficult time hearing high-pitched noises and a more

difficult time hearing female voices than male voices. (Tr. 438, 440).  Dr. Hausladen opined that

plaintiff could hear conversational voices based on his observation that she was able to

understand his questioning at the hearing. (Tr. 438).  Lastly, the state agency reviewing

physician, Willa Caldwell, M.D., opined in March 2009 that plaintiff "does well with face to face

interactions and requires her hearing aid." (Tr. 588).[5]

---

[5]This opinion was affirmed by William Bolz, M.D. in August 2009. (Tr. 720).

The ALJ found that plaintiff was not dependent on lip reading and that her hearing loss was accommodated by limiting exposure to loud noises. (Tr. 477). As stated above, the portion of the RFC limiting plaintiff's exposure to loud noises is substantially supported by the opinions of Dr. Seiden, Dr. Fischer, and Dr. Hausladen. To the extent plaintiff asserts the ALJ should have also included a limitation that she is dependent on lip reading, the ALJ reasonably resolved the conflict in the evidence by omitting this limitation. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Moreover, plaintiff has cited to no medical opinion of record that she requires face-to-face interaction to effectively communicate. The Court therefore cannot find that the ALJ erred by not including a lip reading limitation in plaintiff's RFC. Notably, even if the ALJ erred by excluding a lip reading limitation, any error would be harmless as the VE testified that plaintiff would not need to communicate face to face to perform work as, for example, a small products assembler, inspector, and inspector packer. (Tr. 1082-84, 1087-88). *See Campbell v. Comm'r of Soc. Sec.*, 227 F. App'x 470, 471 (6th Cir. 2007) (reversal not warranted where plaintiff cannot establish that her benefits claim would have had a different result if the ALJ had adopted a limitation).

Second, the ALJ did not err in weighing the medical opinions of record. Plaintiff argues the ALJ should have given controlling weight to the opinions of plaintiff's treating physicians, Dr. Walker[6] and Dr. Patterson, based on the longitude of their treatment relationships and the

---

[6] The Court notes that plaintiff erroneously states that the ALJ provided only a one sentence rejection of Dr. Walker's opinion. *See* Doc. 17 at 18. It appears that plaintiff was citing to the ALJ's prior opinion as opposed to the January 24, 2012 decision that is currently before the Court, which includes a lengthy explanation by the ALJ for rejecting Dr. Walker's opinion. *See* Tr. 477-78, quoted *infra*. It is thus unclear whether the plaintiff mistakenly asserted this error. Nevertheless, the undersigned has reviewed the ALJ's decision to reject the limits provided by Dr. Walker and, as stated herein, recommends that the decision should be affirmed.

14

supporting evidence of record. Upon review of the record evidence, the ALJ's decision to discount the opinions of Dr. Walker and Dr. Patterson is substantially supported.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c)[7]; *Harris*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

---

[7]Regulation 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion was previously found at § 404.1527(d).

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).  These factors include the length, nature and extent of the treatment relationship, and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson,* 378 F.3d at 544.  In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson,* 378 F.3d at 544.  The ALJ must give "good reasons" for not according controlling weight to a treating physician's opinion. *Wilson*, 378 F.3d at 544.  The ALJ must likewise apply the factors set forth in §§ 404.1527(c)(3)-(6) and 416.927(c)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c).  When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

Dr. Walker completed a Basic Medical form in February 2004 in which she diagnosed plaintiff with anxiety, depression, muscle weakness, spasm, and tenderness. (Tr. 215). Dr. Walker opined that plaintiff was able to: stand/walk for 30 minutes without interruption in an eight hour work day; sit for 15 minutes without interruption in an eight hour work day; and frequently and occasionally lift/carry no more than six to 10 pounds. (Tr. 216). Dr. Walker further opined that plaintiff was extremely limited in her ability to push/pull, bend, reach, handle, make repetitive foot movements, and hear. (Tr. 216). When asked to provide specific examples

16

of observations or medical evidence supporting these opinions, Dr. Walker provided

"examination of the patient observing her." *Id.*

The ALJ gave little weight to this opinion because "the only information provided for

[the] significant limitations were a list of impairments [and the doctor] stating that her opinion

was based on her observation of the [plaintiff] and 'physical examination.'" (Tr. 477). The ALJ

noted that Dr. Walker failed to identify any objective findings for the diagnoses and limitations

and that nothing in Dr. Walker's treatment records supported the limitations on plaintiff's ability

to sit, stand, or walk. *Id.* The frequency of Dr. Walker's treatment was also a factor as the ALJ

noted that Dr. Walker had examined plaintiff only twice since her alleged onset date. (Tr. 477,

citing Tr. 212-13) (January 2004 examination notes reveal plaintiff was tender all over; in

February 2004, plaintiff had trigger points on shoulders and elbows, spasms of knees and legs).

The ALJ went on to provide a lengthy explanation for her decision to reject Dr. Walker's

limitations:

> One of the reasons for the remand was the impression that the undersigned [ALJ]
> failed to provide adequate explanation of why the opinion of Dr. Walker, as
> treating physician, was not given greater weight. The problems with Dr. Walker's
> [RFC] assessment, noted above, are sufficient to give it less weight. Although a
> treating source, the treating source rule still provides that the opinion **must** be
> well supported by medically acceptable clinical and laboratory diagnostic
> techniques and the opinion is not inconsistent with other substantial evidence in
> the case record. Dr. Walker's opinion, on its face, does not meet these criteria.
> She makes no mention of diagnostic, laboratory, or clinical evidence to support
> her [RFC] assessment. Her opinion is inconsistent with other evidence, namely
> the testimony of Dr. Randolph at the prior hearing that went into detail about the
> objective evidence of file and the findings on examination (incorporated herein by
> reference). It is also inconsistent with Dr. Fischer's testimony at the current
> hearing. According to Dr. Walker's [RFC], the [plaintiff] would only be able to
> sit, stand, and walk a total of 45 minutes in an 8 hour workday, which essentially
> means she would be bedridden most of the time. Dr. Randolph is a specialist in
> physical medicine and rehabilitation, while Dr. Walker appears to be a family
> physician. Her opinion is also inconsistent with the opinions of the state doctor's

assessment for a range of light work (Exhibit 18F) and, now, medical expert Dr. Fischer's opinion at the new hearing.

(Tr. 477-78) (emphasis in original).

The Court finds that the ALJ appropriately weighed Dr. Walker's opinion in consideration of the factors enunciated in §§ 404.1527(c) and 416.927(c), such as the doctor's specialty area and the opinion's supportability by and consistency with other substantial record evidence. The ALJ gave "good reasons" for not adopting the extreme limitations provided by Dr. Walker and thoroughly explained her rationale. *See Wilson*, 378 F.3d at 555. Thus, the undersigned finds no error in the ALJ's decision to give little weight to Dr. Walker's opinion.

As for Dr. Patterson, plaintiff's argument is confined to one sentence - the ALJ erred by failing "to discuss Dr. Patterson's disability statement at all." (Doc. 17 at 18). Plaintiff's assertion is flatly contradicted by the ALJ's decision which contains an extensive discussion of Dr. Patterson's opinions and the ALJ's rationale for rejecting them. *See* Tr. 478-79. Specifically, the ALJ determined:

> Dr. Patterson mainly provides only diagnoses to support his conclusion that the [plaintiff] is disabled. He does not discuss the objective testing done, what the findings were on examinations to support his restrictions, he does not discuss the nature, frequency and severity of the [plaintiff]'s symptoms other than to say that she is unable to work. Indeed, the physical examinations are generally benign. Dr. Patterson's opinions are inconsistent with the testimony of Dr. Randolph, the state agency's assessment (Exhibit 18F), Dr. Fischer's testimony for light work, and the other evidence of record. As a result, little weight is given to Dr. Patterson's opinion that the [plaintiff] is unable to work.

(Tr. 479). As plaintiff has cited no other basis for finding the ALJ erred in weighing Dr. Patterson's opinions, her argument in this regard is not well-taken. Nevertheless, the undersigned notes that the ALJ was not required to accept Dr. Patterson's opinions that plaintiff is unable to work. (Tr. 150, 669). Whether a person is disabled within the meaning of the Social

Security Act, *i.e.*, unable to engage in substantial gainful activity, is an issue reserved to the Commissioner and a physician's opinion that his patient is disabled is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(c), 416.927(c). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2008) (treating physicians' opinions on issues reserved to Commissioner are never entitled to controlling weight or special significance); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted). The Court therefore finds the ALJ did not err in weighing the opinion evidence of record.[8]

Lastly, the ALJ's determination that plaintiff could perform light work is supported by substantial evidence. Plaintiff's last argument is that the ALJ erred by finding plaintiff could perform light work because "[n]o physician stated that [p]laintiff could perform light work." (Doc. 17 at 19). Plaintiff is incorrect. State agency reviewing physician Dr. Caldwell opined in her RFC assessment that plaintiff was capable of performing light work. (Tr. 585). Further, Dr. Fischer testified at the ALJ hearing that plaintiff could perform a range of light work. (Tr. 1072).[9] Given the existence of two medical opinions of record that plaintiff is capable of performing a range of light work, the ALJ's decision in this regard is supported by substantial evidence.

For the above reasons, the Court finds that the ALJ did not err in formulating plaintiff's RFC and recommends that her second assignment of error be overruled.

---

[8] Plaintiff also argues that the ALJ erred by not adopting the limitations provided by Dr. Herr regarding her shoulder impairment. As this issue was fully discussed in connection with plaintiff's first assignment of error, it will not be readdressed here.

[9] Dr. Fischer also opined that plaintiff was capable of performing a range of light work in response to a

19

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the

docket of the Court.


Date: _10/29/13_

Karen L. Litkovitz
United States Magistrate Judge

---

post-hearing interrogatory issued by the ALJ. *See* Tr. 1036.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DIANE MEYER,                                    Case No. 1:12-cv-546
     Plaintiff,                              Beckwith, J.
                                                Litkovitz, M.J.

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).